IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:03CV153-1-MU

GEORGE SMITH,                    )

        Petitioner,          )

     v.                        )      **O R D E R**

DOUG MITCHELL, supt.,     )

        Respondent.       )

**THIS MATTER** comes before the Court upon Respondent's Motion for Summary Judgment, filed August 28, 2003; Petitioner's Motion for Appointment of Expert, filed August 12, 2003; and Petitioner's Motion for Summary Judgment, filed August 20, 2003.

Upon a review of the record, the arguments, and applicable authorities, the Court finds that Respondent's motion for summary judgment should be <u>granted</u>; Petitioner's motions for summary judgment and for appointment of expert should be denied; and Petitioner's § 2254 petition for writ of habeas corpus should be <u>dismissed</u>.

## PROCEDURAL BACKGROUND

On December 7, 2000, Petitioner was convicted in the Superior Court in Henderson County, after a trial by jury, of possession with intent to sell and deliver crack cocaine, possession of marijuana and drug paraphernalia as an habitual felon. Petitioner was sentenced to 133 to 169 months imprisonment. Petitioner filed a direct appeal. On August 6, 2002, the North Carolina Court of Appeals issued an unpublished opinion finding no error. Petitioner did not collaterally attack his sentence or conviction in state court.

On October 1, 2002, Petitioner filed his first federal habeas petition which was dismissed without prejudice for failure to exhaust his state court remedies. On April 22, 2003, the United States Court of Appeals for the Fourth Circuit dismissed Petitioner's appeal. On June 12, 2003, the North Carolina Supreme Court denied Petitioner's writ of certiorari to review the decision of the North Carolina Court of Appeals.

On June 16, 2003, Petitioner filed the instant federal habeas petition. In his federal habeas petition Petitioner alleges that: 1) the trial court abused its discretion when it failed to appoint an expert witness on the voice analysis; 2) his due process rights were violated when the trial court failed to consider Petitioner's right or need for an expert on voice analysis; 3) his Brady rights were violated when the prosecution gave only two days notice that telephone tape recordings would be used against him at trial; and 4) he received ineffective assistance of counsel because his counsel did not discover the existence of the tapes at an earlier date and file a timely motion for an expert in voice analysis.

## ANALYSIS

### A. Applicable Law

The threshold inquiries for a federal court reviewing a federal habeas petition are whether the petitioner has exhausted his claims before the appropriate state courts and whether those claims are procedurally barred. 28 U.S.C. § 2254. In order to exhaust a claim a petitioner must have fairly presented it to the state courts. See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000), cert. denied, 531 U.S. 1193 (2001).

If a petitioner's claim is unexhausted, it may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the

state court.  See id.  However, when the procedural bar that gives rise to exhaustion provides an independent and adequate state law ground for the conviction and sentence it prevents federal habeas review of the defaulted claim unless the petitioner can establish cause and prejudice for the default.  See id.

If a petitioner's claims are exhausted and not procedurally barred, the federal court must next examine whether or not the petitioner's claims were "adjudicated on the merits" by the state court.  If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in 28 U.S.C. § 2254(d) applies.  If a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits,[1] a federal court reviews the claims questions of law and mixed questions of law and fact de novo.  Angelone v. Weeks, 176 F.3d 249, 258 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000).

The standard of review set forth in § 2254(d) is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree."  Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999).  The standard of review is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001), cert. denied, 535 U.S. 1104 (2002).  This deference extends to summary dismissals.  See Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001).

Pursuant to § 2254(d) a federal court may not grant a writ of habeas corpus unless the

---

[1] If the state court has not ruled on the merits of a claim because it has expressly denied a habeas petitioner's claim based upon an independent and adequate state procedural rule such claim is considered procedurally defaulted in federal court.  See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.), cert. denied, 523 U.S. 371 (1998).

state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ." Id. (internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id,

**B. Expert Witness Claim**

Petitioner alleges that his Sixth and Fourteenth Amendment rights were violated when the trial court denied his motion for a voice expert. Petitioner asserts that it was unfair that the trial court would not even consider the merit of his motion[2] merely because his attorney was late in filing the motion.

Petitioner raised this same claim on direct review. In denying Petitioner's claim, the North Carolina Court of Appeals stated:

---

[2] The Court notes that in the trial court's Order denying Petitioner's voice expert motion, the Court, in addition to noting the untimeliness of the motion, held that "defendant will suffer no prejudice as a result of the denial of said motion."

> Defendant raises several contentions in his pro se briefs regarding the denial of his motion for a voice analyst expert, and he argues the trial court failed to consider his need for an expert. In ruling upon a motion for an expert witness, a "trial court has discretion to determine whether a defendant has made an adequate showing of particularized need." State v. Page, 346 N.C. 689, 488 S.E.2d 225, 230 (1997), cert. denied, 522 U.S. 1056, 139 L.Ed.2d 651 (1998). Here, the trial court concluded "defendant will suffer no prejudice as a result of the denial of said motion [,]" and our review of the record reveals no abuse of discretion by the trial court in denying defendant's motion for a voice analyst expert. Having failed to show an abuse of discretion by the trial court in denying his motion, defendant's related contention that he was denied due process as a result of the denial is without merit.

Because the state court adjudicated his claim on the merits, in order to prevail on federal habeas review, Petitioner must establish that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Petitioner contends that the state appeals court decision was contrary to the United States Supreme Court's holding in Ake v. Oklahoma, 470 U.S. 68 (1985). In Ake, a death penalty case, the Supreme Court held that an indigent defendant has a constitutional right to the appointment of a psychiatrist to assist him in his defense when he "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." See Ake v. Oklahoma, 470 U.S. 68 (1985). Ake, contrary to Petitioner's assertion, does not "clearly establish" that an indigent defendant is entitled to other types of experts. In fact, shortly thereafter, the Supreme Court declined to rule on what, if any, showing would entitle, as a matter of federal constitutional law, the defendant to the assistance of a criminal investigator, a fingerprint expert, or a ballistics

expert. See Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985)(declining, on the facts before it, to extend Ake holding to request for criminal investigator, ballistic expert, and fingerprint expert). It has not been brought to this Court's attention, nor is this Court aware of, any clearly established Supreme Court precedent establishing that an indigent defendant has a constitutional right to a voice analysis expert. Consequently, this Court holds that the state court's decision was not contrary to clearly established existing Supreme Court precedent. Nor has Petitioner successfully established that the state court made an unreasonable determination of the facts.

Finally, this Court holds that any error committed by the state court in failing to provide Petitioner with funds for a voice analyst expert was harmless. That is, based upon the strong evidence of Petitioner's guilt, see infra, the tapes were not essential to the prosecution's case and Petitioner's lack of a voice analyst expert did not have a "substantial and injurious effect or influence in determining the jury's verdict." Because any possible error in the trial court's failure to award Petitioner funds for a voice analyst expert was harmless his federal habeas claim on this issue is dismissed. See Brecht v. Abrahamson, 507 U.S. 619 (1993)(harmless error standard on federal habeas review requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief).

## C. Due Process Rights

Petitioner also argues that the trial court's failure to consider his right for an expert on voice analysis violated his due process rights. Respondent argues, and Petitioner concedes in his response, that this claim is merely a rephrasing of Petitioner's first claim and therefore it is denied for the reasons set forth above.

## D. Brady Violation

Petitioner alleges that the State violated his Brady rights when it gave defense counsel only two days notice that the telephone tape recordings would be used as evidence against him at trial.

Petitioner raised the substance of this argument in his reply brief on direct appeal. The North Carolina Court of Appeals summarily adjudicated and denied it by stating "[w]e have reviewed defendant's additional arguments [in his reply brief] in support of the issues discussed above, and we find them to be without merit. We hold defendant had a fair trial free from prejudicial error." Such a summary dismissal is consider an adjudication on the merits sufficient to trigger § 2254(d)'s standard of review. See Bell v. Jarvis, 236 F.3d 149, 176 (4th Cir. 2000)(en banc). As set forth below, the state court's decision is correct and is not contrary to nor involved an unreasonable application of clearly established law as set forth by the United States Supreme Court. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings.

In Brady the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). In order to successfully assert a Brady violation, a defendant must demonstrate that: 1) the evidence at issue was favorable to the defendant, whether directly exculpatory or of impeachment value; 2) it was suppressed by the state, whether willfully or inadvertently; and 3) it was material." Spicer v. Roxbury Correctional Institute, 194 F.3d 547, 555 (4th Cir. 1999). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings

7

would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985)(internal quotation omitted).

For at least two reasons Petitioner cannot establish a Brady violation. First, the tape recordings were not "material." That is, no reasonable probability exists that if the tapes had been disclosed even earlier the result of the trial would have been different. The tapes were not crucial evidence. Rather, they served to supplement other evidence that established that Petitioner resided in his mother's house. (Tr. Trans. p. 72)(investigating officer testified that he made the second call to confirm that Petitioner was living at his mother's house). Testimony was presented at trial that Petitioner was observed regularly entering and exiting his mother's house. (Tr. Trans. pp. 61, 70) In addition, numerous recently dated documents[3] such as bills and letters addressed to Petitioner at his mother's address were found in the room with the drugs. (Tr. Trans. pp. 61-70). Furthermore, when Petitioner turned himself in to face the charges stemming from the discovery of drugs and drug paraphernalia in his room, he stated that his address was that of his mother's house. (Tr. Trans. p. 67).

Thus the evidence establishing Petitioner's guilt was very strong and the tapes themselves

---

[3] Evidence introduced at trial established that Petitioner lived in the house and that the room searched was his bedroom. During the August 26, 1999, search, the officers found a receipt dated August 16, 1999 for car repairs which listed Petitioner's address as his mother's house (Tr. Trans. p. 61-62); an August 15, 1999, receipt for a money transfer with Petitioner's name and his mother's house listed as his address. (Tr. Trans. p. 61); a recent First Union bank statement of Petitioner with his address listed as his mother's house (Tr. Trans. p. 63); letters and envelopes to Petitioner addressed to him at his mother's house (Tr. Trans. p. 63-64); an insurance bill sent to Petitioner at his mother's house (Tr. Trans. p. 65); a medicaid identification documents and a vehicle tax notice for Petitioner listing his mother's house as his address (Tr. Trans. p. 65); property receipts with Petitioner's name on them and his address listed as his mother's house (Tr. Trans. p. 64).

were not crucial to establishing Petitioner's guilt. At a minimum, given the very strong, if not overwhelming, evidence of guilt, Petitioner has failed to establish that an earlier disclosure of the tape recordings would have created a reasonable probability that the result of the proceedings would have been different.

Second, the record clearly demonstrates that the evidence was disclosed prior to trial. As such, Petitioner's counsel was able to cross-examine witnesses and question the defense's own witnesses regarding the validity of the tapes and the identity of the voices on the tapes. Indeed, numerous witnesses testified that they did not believe it was Petitioner's voice on the first tape.

Consequently, this Court concludes that Petitioner has failed to establish that the state court's adjudication involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or that the state court decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### E. Ineffective Assistance of Counsel

Petitioner also alleges that he received ineffective assistance of counsel because his counsel failed to discover the existence of the tape recordings at an earlier date.

Petitioner raised this same claim on direct review. In denying Petitioner's claim, the North Carolina Court of Appeals stated:

> Defendant next asserts he was denied effective assistance of counsel because his counsel failed to timely file a motion for a voice analyst expert. In order to establish ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). He asserts the tape recordings "allegedly contained conversations involving drug transactions at the

9

> residence of" defendants's mother. However, the individual in the first recording, whom several witnesses testified did not sound like defendant, did not discuss any drug transactions. Instead, the individual asked the confidential informant to bring marijuana when she came to the residence. Although those same witnesses testified, the male voice in the second recording did sound like defendant, that conversation contained no reference to drugs. While the minimal probative value of both recordings was simply to establish defendant's presence in his mother's residence, the testimony of police surveillance and documents found in a bedroom provided substantial evidence of defendant's presence there."

The established Supreme Court precedent governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290.

Again, based upon the reasoning set forth above, at a minimum,[4] Petitioner has not established that he was prejudiced by his counsel's alleged failure to earlier discover the tape

---

[4] Indeed Petitioner has not specifically alleged how or why his counsel should have discovered the tapes. Rather, he merely asserts that his counsel had been assigned to his case for over a year. In addition, Petitioner asserts, without explanation, that his counsel should have filed a motion for discovery rather than the two requests for discovery that he filed.     .

recordings[5] at issue. Certainly Petitioner has not met the burden laid out for him under § 2254(d). The state court ruling on Petitioner's ineffective assistance of counsel claim did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or . . . " in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ."

F. **Motion for Appointment of Expert**

Petitioner requests that this Court appoint expert Tom Owen to testify with regard to his federal habeas proceeding. In the alternative, Petitioner requests that "the Court find the documents ample in the showing of violations claimed by Petitioner."

On appeal, Petitioner submitted a letter from Tom Owen setting forth the conclusion that the tape did not meet the minimum standards for admissibility. This letter is thus part of the state court record. Petitioner, however, has not satisfied any of the standards set forth in 28 U.S.C. § 2254(e)(2). Consequently, no evidentiary hearing will be held and no new evidence be considered. Moreover, this Court holds that such evidence would not impact the result in this case.

G. **Petitioner's Motion for Summary Judgment**

Petitioner has requested that the Court grant him summary judgment on his federal habeas claims. In his motion, Petitioner merely continues to argue the merits of his case. For the reasons already set forth in this Order, the Court denies Petitioner's Motion for Summary

---

[5] It has not escaped this Court's attention that the facts supporting Petitioner's ineffective assistance of counsel claim are inconsistent with Petitioner's Brady claim. That is, if Petitioner's counsel should have discovered the tapes at an earlier time, his Brady claim would fail.

Judgment.

        **THEREFORE, IT IS HEREBY ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED**;

2. Petitioner's Motion for Appointment of Expert is **DENIED**;

3. Petitioner's Motion for Summary Judgment is **DENIED**; and

4. Petitioner's Petition for a Writ of Habeas Corpus is **DISMISSED**.

**Signed: August 5, 2005**

*Graham C. Mullen*
Graham C. Mullen
Chief United States District Judge